Our third and final case on the call of the docket for the January term 2011 is agenda number 12 case number 1 1 0 6 7 9 Phoenix Insurance Company appellant versus Martha Rosen. Appellee, counsel for the appellant. Good morning I may please the court counsel. My name is Michael Reisness and I am here today on behalf of Phoenix Insurance Company as plaintiff appellant. The issue in this case is whether an arbitration provision allowing the parties to reject underinsured motorist awards above the minimum limits of financial responsibility of $20,000 is valid and enforceable. The same clause has been held to express the public policy of Illinois as part of the statutorily mandated uninsured motorist coverage. We respectfully submit that a clause that is part of the insurance code for uninsured motorist coverage cannot be void when the parties voluntarily contract for it as part of underinsured motorist arbitration. In either case of underinsured or uninsured motorist coverage the right to reject is mutual above the $20,000 threshold for rejection and below $20,000 binding arbitration is reasonably related to the same public policies of reducing litigation costs and promoting the resolution of claims that led this court to uphold the statutorily mandated clause for uninsured motorist coverage in Reed versus Illinois I think the defendant here makes an argument that there's a great incentive for the insurance company to be able to reject the award if it's large and would not want to if it's small. So that operates in favor of the insurance company. Is that same thing at work in the I don't believe that you can really distinguish between the two clauses. I mean, granted, in one case it's legislatively required and in the other instance it's a matter of contract. But I don't believe there's any way really that you can distinguish between how the clause operates between the two types of coverage. To me, there's no you can't it would be anomalous for the court to uphold that the clause expresses public policy when it relates to the one uninsured motorist coverage if by happenstance the insured is involved in an accident with someone who When it so happens that the insured is involved in an accident with someone who has is underinsured. But that's exactly what the court did in distinguishing Bogaluskas, right? Well, in Bogalikas, we're talking about Reed now, in Reed, the court simply noted that the clause was not statutorily mandated unlike the uninsured motorist coverage. I mean, that's absolutely true that we're talking about something that's a matter of contract. But what I'm suggesting is that if it's not against public policy when it's part of a statute, the same end, the same way that the clause works can't be against public policy when the parties reach that same agreement voluntarily as a matter of their contract. It shouldn't be different between the two cases. And to be consistent, we submit the clause should be enforced. The legislature in all the years since Bogalikas has never amended the code to add such a requirement, right? Well, you'd have to go back before Bogalikas because the first case is Mahon, which supported the clause. The legislature didn't change the clause after Mahon was decided in 1989. So you're correct. They didn't change it after Bogalikas, which invalidated the clause. They didn't change the code after Mahon, the first case to address the issue, which upheld the clause. There is an argument in counsel's brief that relies on this notion of legislative acquiescence. But if you look at the case history, beginning with Mahon, and if you apply the rule of legislative acquiescence, that rule favors my side of the case because the first case is Mahon and Mahon upheld the clause. There are some slightly different policy considerations, aren't there, with respect to uninsured and underinsured? I think the claim was made with uninsured, for example, to make the person whole as to whether that person had the minimum insurance, right? Versus underinsured when you're dealing with your own policy. How do you address those arguments? Well, I think in Bogalikas, the author of that decision, who happens to be on the court, made the observation. You're hoping I'm older and wiser now, right? It wouldn't be the first time I had that hope when I was addressing either an appellate court or something. That's a very good response. I don't think I can do better than that. It would not be the first time, and I am rarely disappointed. But to go to your point, it's true that in the case of underinsured motorist coverage, if there is an award of $20,000 or less, and this clause operates, the insured will not recover under his policy, which is different from But that's only because, as a result of arbitration has been determined, that the insured was already fully compensated from the proceeds of the tortfeasor's policy. Now, the fact that the insured is not guaranteed a recovery under his own policy is not unfair. An award that is less than $20,000 or less simply means that the other driver, the tortfeasor, was never underinsured. And remember, when we're talking about the arbitration process here, whether we're talking about uninsured or underinsured, it's the exact same process. Arbitration under the underinsured motorist coverage tracks the statutorily mandated arbitration process of uninsured motorist coverage. And we would submit that if the process is fair as to the one type of coverage, it's also not unfair to the insured with respect to the other type of coverage. What's the benefit to the insured in this scenario? I mean, is there any benefit at all? Well, the benefit is that if he goes, when the insured goes through arbitration, if the award is above $20,000, it may be something that both sides can live with. And that happens. If both sides can live with the award above $20,000, well, then the benefit to the insured is he has gotten a resolution without having to go through the court system. And of course, under counsel's argument, since the clause would be invalidated when the insurer would not have a right to reject for an award above $20,000, the result would be an insurance company would no longer have this provision in the policy, and we would have all types of claims for underinsured motorist coverage put through the court system. But to answer your question, the benefit is if neither side rejects the award above $20,000, then you've had the arbitration take place without. The insurer doesn't really have the opportunity, though, to delete the clause. No, just as would be the case if it was uninsured motorist coverage. In fact, the insurance code recognizes that the two are closely linked, the two coverages. But in one situation, the legislature required it, and then in the second situation here, there's no bargaining power between the insurance company and the insurer. Well, because of the way the code works, it is possible. Now, it's not true under this policy, but it's possible that you could combine the two coverages. The insured opts for coverage above $20,000. He has to take the underinsured motorist coverage in the same amount, and then another provision of the code allows the insured to combine the two coverages. If you have two coverages, you can have one agreement. So I don't necessarily agree that you can simply say, well, there's something nefarious going on here with, there's something nefarious afoot, because the insured has to accept the clause. The insurance code recognizes the possibility that the two coverages can be combined under one agreement. So while you're saying it's true, what you're saying is true, that there is perhaps the lack of bargaining power, you have to realize that this clause is part of the uninsured motorist coverage, and the insurance code leaves open the possibility that the coverages can be combined subject to that one agreement. Is that your argument or explanation for why you would say the legislature didn't provide for this with the underinsured, but did provide for it with the uninsured? That is one explanation for why the General Assembly may have decided that it had confidence in the courts to construe the statute and uphold the clause in reading, and that the courts would be, leading to the Supreme Court, would be able to resolve the issue as you've raised it. So yes, definitely, I think there may be one explanation for why there's been this inactivity by the General Assembly going back to Mahon, going back for 20 years. What other explanations would there be? You said one explanation. Well, I think that's probably the one I want to go with, in all honesty. Mr. Reese said the provision at issue relates to the legitimate purpose of reducing litigation costs and promoting the resolution of claims. But doesn't it do really the opposite? Because a trial de novo clause increases the cost of litigation, because now a trial will be required, and it increases the time required to resolve the claim. Let me be clear on this. For cases where the award is $20,000 or less, and it's not a trial, and it's not a litigation, and it's not a trial, and it's not a litigation, and it's not a litigation, and it's not a litigation, and it's not a litigation, and it's not a litigation. It does do what this Court in Reed recognized, which is to resolve claims. Perhaps to the insurer's disappointment, but the claim is resolved, because by virtue of the arbitration award, he has already been fully compensated from the proceeds of the tortfeasor's policy. Now, above $20,000, okay, what we're talking about is the $20,000 claim. There is, either side can reject. It's non-binding. The right to reject is mutual. If you were to prevent insurance companies from exercising that right of rejection, which is really the remedy that the defendant has been arguing for, and which, admittedly, some appellate courts have embraced, I think the remedy would be a mismatch for the awards of $20,000. I think you have to distinguish between cases 20 or below above $20,000. Above $20,000, the defendant would have this Court create a lack of mutuality that does not exist in the clause for non-binding awards by allowing only the insured to reject such awards. The effect of the defendant's argument would be to remedy a one-sidedness that does not exist presently by unfairly creating a rule by judicial fiat that allows only insureds to reject awards that are above $20,000. And to adopt that result violates the usual rule that a court cannot, consistent with Illinois law, rewrite the arbitration agreement to favor one side over the other by enforcing only one part of the law. That would be a breach of the parties' right to reject. How is there mutuality here? Well, the mutuality above $20,000 here is that either side could have rejected, and depending upon who was disappointed with the award. Now, in this case, it happens to be the insurance company that thought that the award was too high. In another case, it might be that it's the insured's right to reject, and you need look no further for that than two appellate cases, Zappia and Cost, one from the first and the other from the fifth district, where in each case, it was the insured which exercised the same right of rejection. If we look at it, there was a clause that both sides were only bound to awards over $250,000. I mean, an insurer would never go along with that clause, wouldn't it, that there be so-called mutuality? Well, is that clause, let me ask you this, is that clause part of the insurance code, or is that just something that is... Part of the insurance clause. By the code, you mean the code? I mean, I'm just trying to understand the hypothetical. Is it something that we're talking about comes from a statute, or is it coming from just the contract of the parties? Contract of the parties. The insurer would never agree to that, and yet there would be so-called mutuality, right? Sure. Either side can say, well, you know, because I think your argument is, well, the insured may feel that the claim was worth more than $100,000, and if the award is $100,000, maybe it would be the insured that decides to have a trial, right? Sure. And there's mutuality there. Well, there would also be so-called mutuality if the clause in the contract said that only on awards over $250,000 can either side decide to have a trial de novo. Okay. And if that's the case, I mean, there's so-called mutuality there, too, but the insurer would never agree to that clause, right? I'm just trying to say that this argument that there's mutuality for the insured, I mean, yeah, I guess technically there is. I mean, Justice Thomas, this clause, as it was written at the time of the accident, tracks the insurance code. All right? I mean, that's a fact. And the insurance code has been amended since the accident in case of uninsured motorist coverage to raise the level of rejection from 20 to 50. But it hasn't repealed non-binding arbitration. It hasn't found that there is something just so unfair about it. All right? In the one case, well, it would be anomalous to say it's unconscionable or it's unfair or it needs to be voided when, by happenstance, the other driver, instead of being uninsured, simply is underinsured. Now, the defendant argues or really has ignored the public policy implications of her argument. And I alluded to this earlier, but if you consider for the moment that if an insurance company cannot reject awards that are above $20,000, because of the sense of a lack of mutuality for awards below $20,000, insurance companies simply won't have these clauses in their underinsured motorist provisions of their contracts. And the result will be that all of these claims now will simply be put through the court system. That is the logic at the end of the argument presented by the defendant. We submit that it's difficult to see how public policy is advanced by the introduction of a new class of claims into the court system. Defendant's argument would be certain to delay the resolution of all cases rather than speed the resolution of underinsured motorist claims. There is some mention in the briefs about some of the out-of-state cases that have addressed the clause. These cases were not looked to in read, I submit, because Illinois has its own public policy favoring non-binding arbitration. But if the court looks to those other states, you will see that the clause has been upheld in some jurisdictions. Defendant has not cited any jurisdiction where the clause is invalid when it is part of underinsured motorist arbitration, yet codified as part of uninsured motorist arbitration, as is true in Illinois. The anomalous result for which the defendant is arguing that the clause is not against public policy when it is part of uninsured motorist coverage, but against public policy when it is part of underinsured motorist coverage, is not the law anywhere. Mr. Reese, your time. To conclude by way of summary, we believe that the clause is valid. We think that the usual rules of construction should apply to this arbitration agreement. And because the appellate court did not follow those rules, we ask you to reverse the appellate court and affirm the trial court. Thank you very much. Thank you, Mr. Reese. Good morning, Your Honors. My name is Alvin Becker. I am privileged here to argue on behalf of Martha Rosen. So in a mythical sense, when Mrs. Rosen first purchased her policy of insurance, she bought this policy and it contained this provision for a strange thing called underinsured motorist coverage. And in order to exercise those rights and remedies, if she could understand the policy, she found out that she needed to go to arbitration. And she understood because it kind of said so, if she could understand it, that if the insurance company, or perhaps she, was dissatisfied and the award was over $20,000, we'd start all over again. Had she shopped around, because in Illinois we exercise the right of freedom of contract, and she would have gone to the director of insurance website or his electronic filings, she would have found that every single policy issued in the state of Illinois at the time she purchased her policy, at the time of her injury, at the time of the arbitration, at the time of the judicial proceedings contained exactly the same clauses. So much for freedom of contract. You can't simply buy such a policy that provides otherwise. I was very interested in the observations and the question that Justice Thomas put to my very able opponent about changing the threshold for rejection. At least to me it demonstrates that you might be older since Bukalakis, but you certainly couldn't have been any wiser because you sure got it right then and you got it right today, respectfully. So the purpose, I guess, of these arbitration clauses is to effectuate a prompt, speedy, inexpensive and efficient resolution of a controversy, considering that the arbitration process from the day of the accident to the day of the award took approximately seven years, and this is not finger pointing. I'm not saying the insurance companies stalled this. That's not my argument. It's an inherent nature of the process. It took seven years. It doesn't provide the optimism that all others think it is. In fact, in this court's decision in Reed, three justices of this court thought the whole business of rejection was contrary to providing a prompt, speedy and inefficient resolution, and notwithstanding the statutory authorization, thought the whole statute providing for rejection was unconstitutional. The reason courts, and including the Lee decision, which began with Bukalakis, finds these clauses to be unconscionable and violative of public policy is because they're much more likely to be used by the insurer to beat down the insured if there's a ward for $20,000 or more. A very minimal amount considering somebody bought coverage here for up to $500,000. Clearly this is a contract of adhesion. A contract of adhesions are not bad. You don't go to jail because there's a contract of adhesion. But it's one of the ingredients that this court and every other court looks into to determine whether or not it is satisfied with the process in connection with that contract. And whether or not it meets the goal it's intended to. You can't answer those. You cannot realistically answer that honorably and correctly the way the insurance company is. It defeats all of those purposes. After Bukalakis was decided, this court decided the Reed. Reed did not come in the context that my able opponent is suggesting that it did come to the court in. And uninsured motorist is simply not underinsured motorist. It's a different kind of a coverage. And if I could spend just 15 or 20 seconds on that. In Illinois, you must have uninsured motorist coverage. You don't have the privilege to say I don't wish it. If you have uninsured motorist coverage, excuse me, if you have liability coverage for more than $20,000, our financial responsibility amounts, then you go to another section of the insurance code, not the uninsured motorist section, called the underinsured motorist section. It's not in the same section. It's got a different number. It was enacted at a different time. And it's so simple as to how it works. If you bought public liability insurance for more than $20,000, then unless you, the insured, reject it, it's not even asked of you, unless you reject it, you automatically get uninsured motorist coverage equal to your public liability insurance coverage. And if you have uninsured motorist coverage for that amount, you automatically get underinsured motorist coverage. So that is the only connection between underinsured and uninsured. And that is the uninsured coverage that you buy does dovetail with the amount of underinsured that you may purchase, because you can't get more underinsured than you have uninsured. How does our decision in Schultz affect your argument in that regard, where we said that those provisions are inextricably intertwined? Well, they absolutely are, for the reasons I hope I've satisfactorily explained. They are intertwined, Your Honor, because the amount that you purchase is determined by, of underinsured, is determined by what you bought for uninsured motorist. You cannot buy more in underinsured than you bought in uninsured. But the process happens to be very different. They cover different kinds of wrongs. They cover different kinds of damages. Remember, the uninsured is somebody to satisfy Section 143A, you're simply buying protection that this person doesn't have coverage equal to the financial responsibility amount. The other coverage is coverage so that you will be fully indemnified, so that the at-fault driver has, you will be entitled to recover what your damages are up to the amount of your coverage. It's interesting to note that it's been 30 years or longer since Section 143A, the uninsured motorist section, required, not permitted, that all uninsured motorist disputes be resolved by arbitration. All, no exceptions. That means it can't enter the judicial system, and it doesn't enter the system. It's interesting to note that the underinsured motorist section statute never had such a provision, ever. It is interesting to note that the uninsured motorist statute at 143A, with regard to claims that do not exceed $20,000, have this incredible detailed process for, at arbitration, almost like a workers' compensation case for processing such a claim speedily. No such provision in the underinsured motorist coverage. When this court decided to read, this court made clear that the reason that the difference between the statutes is that the legislative branch settles the public policy of the state. They've settled it in uninsured motorist by giving a right of rejection. There is no such provision, of course, in the underinsured, which is one of the reasons we're here. But this court noted that's why there is a difference because of that, and we don't need to pass on Bougalakas because Bougalakas doesn't involve, it is dispositive. Nothing has changed since then. But what is interesting is what happened with this court right after Bougalakas, excuse me, read was decided. Your honors were presented with the Parker case, which was decided by the third district, which adopted Bougalakas. Yes, with one judge dissenting. And you sent it back on a supervisory order for the third district to reconsider in light of read, and the third district reconsidered it in light of read and reaffirmed their position that Bougalakas was controlling. They filed a petition for leave to appeal to this court after, again, and this court this time denied the petition for leave to appeal. So was the state of the law for at least 10 years after Bougalakas, including a decision in the fifth district in Cass until we got to a first district decision, which reaffirmed Bougalakas, Justice Hoffman dissenting. And then 11 years later, that is 11 years after Bougalakas, the first district decided that the dissenting decision of Samick was followed, and then we have this decision where another panel of the first district declined to follow Samick. Some of the arguments that are made here by a very good lawyer, my opponent in this case, he has told you that these are contracts, and I've tried to address that, that they're voluntarily entered into. They're clearly not voluntarily into because they're the only game in town. You can't buy it anyplace else. This is what you get. He says that it'll be a bad thing because it'll floodgate the court system. I don't know why insurance companies always make that argument. If there is an influx because they delete the arbitration clause, well, they've deleted the arbitration clause just as the General Assembly did in uninsured motorist cases. They can mandate it back in again. That is all decisions, but they've never addressed that subject. They've made numerous revisions to the underinsured motorist statute. Since Bougalakas was decided, during that 10-year period when there was no court in this state, no reviewing court that had held anything other than the Bougalakas result, and they've never once required that there be arbitration, and they've never put in a kick-out clause. My able opponent says, well, the first case you should be considering here is Mahan. With all due respect, he's wrong. Mahan never considered the public policy argument with regard to non-binding arbitration. It simply said that non-binding arbitration is not per se violative of public policy. That is the only argument. Nobody else has ever cited it for that proposition. Now, one of the questions that was put to my opponent was, well, is this going to result in every case is the insured disadvantaged by virtue of this, substantially disadvantaged. Well, of course it's not in every case. And nor has any argument been made that in every fact scenario it works adversely to the insured. But the fact of the matter is, it is geared so that an insurer will never permit a higher reward. And the answer to that question is, why should they? If they have this right, with all due respect, to make the first run a dress rehearsal or a mulligan, why on earth should they accept it? Why on earth should they pay the money today if they can delay it three or four years later and say, that's freedom of contract. It's right in our contract. Our General Assembly has never approved such a provision. They had every opportunity to approve it. With one exception, every court that has considered the question in this state reviewing court has rejected that argument. So as courts have in Connecticut, Delaware, New York, Minnesota, Vermont, and California, which doesn't mean that every other court has rejected it. Yes, there are two or three courts that have sustained the validity of this. And we're not counting numbers here because that's not a qualitative answer. But the fact of the matter is, there have been 15 Illinois reviewing court judges who have said this clause is invalid. There have been five who said it's not invalid.  I'm sorry. Can I answer this question in terms of the play of those cases? Most of the cases, the appellate cases, rely on this idea of black mutuality. And, of course, a couple of them, I'm trying to go back and see which ones. A number of them, I know, say because there's no, all of the cards are stacked in favor of the insurer against the insured. And yet we have two cases, Cost and Zappia, where, in fact, it's the insured who's rejecting. So how do we balance that into our analysis about mutuality? Well, if you look at the first such case would be Cast, Your Honor. Cast is the Fifth District case. And it was, in fact, the insured who made the argument that, and what the court said was, we are punishing you, insurance company, because you put in a clause, my word, is punishment. It doesn't specifically say that. But one of the consequences, maybe I need to tone that down a little bit. One of the consequences of your insertion of a clearly invalid clause is that we are going to give the insured the benefit of that bargain that said that every award over $20,000 either side may reject. With all respect, that really doesn't answer the question. It simply is we're giving you the benefit of the contract bargain because the insurance company put in a clause that it should not have put in to begin with. But certainly it's an example of a fact scenario in which it's in the insured's interest to have this right. As I said, the argument generally has been there's no mutuality here. The cards are stacked all in favor of the insurer and against the insured. And yet we have two cases in which it's the insured who is, in fact, has a reason. In that case, there was a negligence reduction of 50%. And so the insured wants to go ahead and have a trial. He already had one. Pardon? He already had a trial. He had a trial called arbitration. Well, he didn't have a trial. Maybe we can just. Okay. But in any case, what we've seen in these cases is that there are fact situations in which insureds want to use the same clause. I think the best way I could answer that, and I hope I answer it directly, and that is I have never claimed, nor have any brief we have ever filed claimed that in each and every case, whatever the hypothesis be, that it will only work for the benefit of the insurer, there are cases where it would work in benefit of the insured. Frankly, that same observation you have made to me was an observation that was made in Bugalakas. And with all respect, I'm going to rest on how Justice Thomas answered that. In that case, and that is it is not inexorable, but it is highly likely, and that is the same rationale respectfully that the courts in those other states that I have mentioned to you have analogized that as a response to the very able question you just asked me. I think I have addressed all the points I wish to make. I'd be pleased to try to answer any other questions that may be put to me. And if there aren't any, I promise to sit down. No questions. Thank you, Mr. Becker. Thank you. Mr. Reeses. I want to start with perhaps the last question that Justice Tice asked concerning how counsel's argument fares in terms of mutuality of remedy when we have two appellate cases that have recognized a right of rejection by the insured. I think the point behind what those cases illustrate, and I think what Justice Tice's question illustrates, is that you simply cannot generalize about how this clause operates. Whether an award is, quote, low, close quote, or high, close quote, depends on the damages that the parties expect the arbitrators to award. Now, what's high in one case may be low in another case and vice versa. An insurer which evaluates the case as one of no liability may believe that any award in that case is too high, whereas in another case, an insurer who believes that the case is worth $300,000 may be disappointed by a low award of $150,000. I think that's the cost case in a nutshell. And in that case, it would be the insured, not the insurer, which would want to reject, and it would be the insurance company which would only be too happy to pay the award of $150,000. What those two cases illustrate is that the right to reject is not hypothetical and it's not illusory the way some courts have merely assumed. The question was asked, I think by Justice Garmon, as far as how do the two coverages, uninsured and underinsured motorist coverage, play out here, when in Schultz the court said that the two coverages are inextricably intertwined. Those are the exact words, inextricably intertwined. And it's true, as counsel says, that one way in which they are inextricably intertwined has to do with how the limits follow so that if the insured opts for more than $20,000 in uninsured motorist coverage, he has to buy the same amount of underinsured motorist coverage. But the two coverages are inextricably intertwined in another way, which counsel really would like you not to consider. And that is that under subparagraph 4 and subparagraph 5 of 143A-2, the insurance company is able to combine those two coverages into one coverage. Didn't happen in this case. But the code contemplates they can do that. And they can do that without anything nefarious going on, and despite the fact that there may be certain earmarks of adhesion, which we know is a fact of modern life, and there's nothing wrong with that. And if they can combine the two coverages into one coverage, they can have one agreement. Do we have any ñ I know we've been talking a lot about buccaliches, but I'm wondering do we have any stare decisis principles at play here? And I specifically refer to Justice Wolfson's concurring opinion in SAMIC in which he opined that Reed was a clear signal that buccaliches was correctly decided because the Supreme Court went out of its way to leave that decision intact. I mean, is it as simple as saying that that was just dicta in that case, or do you not even go that far? I think that the Supreme Court got it right in Reed. It addressed and answered the question that was before it. It didn't go out on a limb. It didn't go and issue dicta about whether it approved or disapproved of buccaliches. And I think it would not have been proper. So Wolfson is reading too much into it? I think he's reading too much into it, definitely, just as I think counsel reads too much into the fact that the Supreme Court did not take the case in Parker after the case had been remanded in light of Reed. I mean, if there's any principle applicable here, the principle that's applicable is that the denial of petition for leave to appeal is not precedential. It's not a ruling on the merits. So the fact that the court didn't take Parker is not precedential, just as the fact, if you go back to Mahan, the very first case, the granddaddy case that addressed the clause in 1989, the Supreme Court didn't take that case either. Didn't take Mahan. Didn't take buccaliches. Didn't take Parker. Didn't take Samick. You can't read anything into it. There isn't any signal. There isn't any smoke signal or semaphore that's being put out, I think, by the court. It may be that, you know, sometimes lawyers, because it's so, let's face it, it's very hard to get here. And it may be that lawyers want appellate judges. And so many of you were appellate judges before you were Supreme Court judges. You're looking at the few decisions the Supreme Court has decided, and you want to try to read something into it, as I think Justice Wilson was doing in print in his special concurrence in Samick, but I don't think you can do that. So I don't think there's any principle of stare decisis that you can draw on, either from the denial of a PLA in one case or the fact that the Supreme Court distinguished buccaliches in read and simply addressed the provision that it had to address in the case before it without issuing a pronouncement and making dicta. I think the court did the right thing. It did its duty in that case. Counsel made a couple of other remarks. You would admit, though, I mean, part of your argument as to these two clauses being inextricably intertwined, it simply would have been an opportunity for the court in read to address the underinsured motorist provision in buccaliches. No one would have briefed that issue. No one would have been asking the court for dicta and dicta to pronounce on that. And I don't think today that the court, if faced in the same situation, would, if it had read, if it was addressing read and the statute, would go out of its way to opine on the clause in a different context. Counsel wanted to talk about the different jurisdictions which have addressed the issue. And the thing I find most notable is I don't know of any other jurisdiction which has codified nonbinding arbitration as part of the uninsured motorist coverage and upheld that provision in read and then invalidated the same clause when it's not part of the statute but a matter of private contract under the underinsured motorist coverage. There is no jurisdiction. There is no case that makes the distinction that counsel wants you to make the public policy and the law in the state of Illinois. Illinois would be an outlier. No other jurisdiction has reached the result that he is arguing, the anomalous result for which he is arguing. I know that I may have overstayed my welcome when I first got up here the first time, so I will conclude by once more, with time still on the clock, asking the court to reverse the appellate court and affirm the trial court in this case and apply the clauses written. Thank you. Thank you, Mr. Reeses and Mr. Becker, for your arguments. Your case concludes the public call of the docket for January 2011. Your case and the other cases are under advisement. Mr. Marshall, the Illinois Supreme Court stands in adjournment.